UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOUIS J. PERFETTO, JR.,                                      03-CV-0439E(F)

                        Plaintiff,

                                                             MEMORANDUM
        -vs-
                                                             and
ERIE COUNTY WATER AUTHORITY,
                                                             ORDER[1]
                        Defendant.

---

## INTRODUCTION

On May 7, 2003 Plaintiff Louis J. Perfetto, Jr. ("Perfetto") filed this lawsuit

against his former employer, the Erie County Water Authority ("the ECWA"), in

which he alleges that the ECWA violated his Due Process rights as secured by the

Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C.

§1983, violated §75-b of the New York Civil Service Law and §740 of the New York

Labor Law and breached a contract it had made with him and intentionally

inflicted emotional distress upon him when it retaliated against him because he

informed members of the ECWA that other employees were allegedly committing

improper acts.   Pending before the Court are ECWA's Motion for Summary

Judgment as well as Perfetto's Motion for Partial Summary Judgment pursuant

to Rule 56 of the Federal Rules of Civil Procedure ("FRCvP").   Each party asserts

---

[1]This decision may be cited in whole or in any part.

that there exist no genuine issues of material fact and that each is entitled to judgment as a matter of law.

## **FACTS**[2]

Perfetto began his employment with the ECWA as a meter service worker in July 1997.  Thereafter he became active in the union and, at the time of the relevant events, was the chief union steward of Local 930, AFSCME, ("the Union").  In August 2000, Perfetto was brought up on various disciplinary charges which are unrelated to the instant lawsuit.  On November 9, 2000 Perfetto allegedly met with James Lisinski ("Lisinski")[3], the Coordinator of Employee Relations for the ECWA, and advised him of several events which Perfetto contends were instances of improper conduct at ECWA including, *inter alia*, a plot to terminate the employment of ECWA employee Annette Juncewicz in retaliation for her husband's political activity and an alleged decision by Robert A. Mendez ("Mendez"), the Executive Director of the ECWA, to install at the ECWA's expense a water main servicing certain private property to be developed in

---

[2] Except where otherwise noted, the following facts are undisputed.

[3] Lisinski denies that he met with Perfetto on this or any other date to discuss any matters at issue in this action.  Lisinski asserts that, on that date in November, he had a brief encounter with Perfetto in a hallway at which time Perfetto was complaining about having been brought up on Article 75 disciplinary charges.  *See* DeLuca Aff. (Docket # 24), Ex. C at 43-52.

Lackawanna.[4]   Perfetto also allegedly informed Lisinski that Clarence Lott ("Lott"), the EEO Officer for ECWA, had conducted political activities on ECWA time and had used the ECWA computer equipment to visit inappropriate internet websites.  On November 27, 2000 Perfetto met with Lott and allegedly advised him of the plot to terminate Ms. Juncewicz, Mendez's conduct with respect to the water main, as well as improper conduct by Lisinski, — specifically, that Lisinski had improperly received full tuition reimbursement from the ECWA for classes in which Lisinski had not achieved the required grade necessary to be eligible for such reimbursement.

On December 12, 2000 Perfetto and the ECWA entered into an agreement resolving the August 2000 disciplinary charges ("the Agreement").  Under the terms of the Agreement, Perfetto served a one-week suspension in January 2001 and, in exchange, the ECWA agreed not to sanction Perfetto for any alleged misconduct that may have occurred prior to December 12, 2000.

On May 7, 2001 the ECWA filed disciplinary charges against Perfetto alleging that, because he failed to provide documentation of his appearance before a Grand Jury on November 1, 2000, he was absent from work without authorization on November 1, 2000.  Perfetto was also charged with failing to

---

[4] Perfetto asserts that such water mains are usually paid for by the private property owner, not the ECWA. *See* Collucci Aff. (Docket # 22), Ex. K at 85

provide documentation of his Grand Jury appearance when again requested to do so in March 2001.  The disciplinary charges were amended on May 31, 2001 and amended a second time on June 12, 2001 to add a third charge of falsifying sick time.

Pursuant to the collective bargaining agreement between the Union and the ECWA and Article 75 of New York State Civil Service Law, the disciplinary charges were heard by an impartial Hearing Officer and, on September 28, 2001, the Hearing Officer recommended that the ECWA's charges be dismissed Specifically, the Hearing Officer concluded that the first two charges — relating to the documentation of Perfetto's Grand Jury appearance on November 1, 2000 — were precluded by the Agreement and that the evidence did not support the third charge regarding Perfetto's alleged misuse of sick leave.  On November 14, 2001, despite the Hearing Officer's recommendation, the ECWA found Perfetto guilty of all three charges and imposed a 30-day suspension.

On May 11, 2001, Perfetto commenced an Article 78 proceeding in New York State Supreme Court, Erie County, which he amended in December 2001, alleging that the ECWA had acted arbitrarily and capriciously by finding him guilty of the disciplinary charges and that the ECWA had made such finding in retaliation for his whistleblowing activity.  Perfetto's petition was transferred to the New York State Supreme Court, Appellate Division, Fourth Department, ("the Appellate

- 4 -

Division") which, on October 1, 2002, annulled the ECWA's guilty determination, dismissed all disciplinary charges against Perfetto, reinstated Perfetto to his former position and awarded him lost wages and benefits.  On August 8, 2002, while his Article 78 petition was pending before the Appellate Division, Perfetto resigned his employment with the ECWA.  He thereafter commenced this action on May 7, 2003 in New York State Supreme Court, Erie County, and the ECWA removed the action to this Court on June 9, 2003.

Perfetto's first claim seeks the entry of judgment, reinstatement, back pay, lost benefits, and front pay based on the Appellate Division's ruling that the ECWA's finding of guilt was arbitrary and capricious.  Perfetto's second claim seeks a determination that, by instituting and prosecuting the May 2001 disciplinary charges, the ECWA retaliated against him for his "whistleblowing" activity in violation of §75-b of the New York Civil Service Law.  Perfetto's third claim asserts that, because the Appellate Division ruled that the ECWA breached the Agreement by instituting and prosecuting the May 2001 disciplinary charges, Perfetto is entitled to a return of his consideration for the Agreement — *viz.* the value of the one-week suspension he served.  Perfetto's fourth, fifth and sixth claims for intentional infliction of emotional distress have been previously dismissed by the Court.  Finally, Perfetto's seventh claim alleges that the ECWA's actions violated his Fifth and Fourteenth Amendment Due Process rights.

On April 5, 2005, both parties filed Motions for Summary Judgment. Perfetto seeks partial summary judgment on the grounds that: (1) the ECWA is collaterally estopped from arguing that it had a legitimate reason for disciplining him; (2) Perfetto was subjected to a continuing course of retaliatory conduct such that he is entitled to summary judgment on his retaliation claim under the First Amendment[5] and his due process claim under the Fourteenth Amendment; and (3) the ECWA breached the Agreement by attempting to discipline him for conduct occurring before December 13, 2000.

The ECWA seeks summary judgment on the grounds that: (1) the first and third claims are barred by the *Rooker-Feldman* doctrine[6]; (2) Perfetto's second claim must be dismissed because he fails to satisfy the requirements for bringing a section 75-b claim; and (3) Perfetto's section 1983 claim must be dismissed because he failed to assert a deprivation of a federally protected right pursuant to an official policy or custom of Erie County and because, to the extent he did allege such a policy or custom, Perfetto cannot establish a due process violation because he received all the process due him.

---

[5] As discussed in greater detail, *infra*, Perfetto first articulated on this motion that his retaliation claim was premised on the First Amendment. The ECWA argues that Perfetto should be precluded from asserting such a claim at this time because he did not assert it in his Complaint.

[6] *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983).

## **DISCUSSION**

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCvP 56(c). In determining whether genuine issues of material fact exist, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson* v. *Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986) (internal citation omitted).   However, to defeat a motion for summary judgment, the nonmovant cannot simply rely on allegations in the pleadings that merely raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, at 256.

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo* v. *Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994).  Upon a motion for summary judgment, the Court's role is limited to determining whether there exists any genuine issue of material fact requiring trial.

- 7 -

A.  <u>Claims One and Three</u>

In his first and third claims, Perfetto seeks entry of judgment based on the conclusions reached by the Appellate Division in his Article 78 proceeding. Perfetto contends that, because the Appellate Division dismissed the disciplinary charges against him and concluded that the ECWA's institution of at least the first two disciplinary charges violated the Agreement, he is entitled to judgment awarding him back pay, front pay and, with respect to the breach of the Agreement, a return of the value of his one-week suspension.

In its Motion for Summary Judgment, ECWA argues that claims one and three must be dismissed because this Court lacks jurisdiction to enter judgments in accordance with decisions of New York State courts pursuant to the *Rooker-Feldman* doctrine.  Perfetto did not respond to this argument.

1. <u>*Rooker-Feldman* Doctrine</u>

The Supreme Court recently further defined the contours of the *Rooker-Feldman* doctrine.  In *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. - - -, 125 S.Ct. 1517 (2005), the Supreme Court:

> "confined [the application of the doctrine] to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

544 U.S. at - - -, 125 S.Ct. at 1521-22.   The Second Circuit Court of Appeals in *Hoblock* v. *Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005), further distilled the Supreme Court's instructions into four elements which must be satisfied in order to apply the *Rooker-Feldman* doctrine.

> "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment.  Third, the plaintiff must invite district court review and rejection of that judgment.  Fourth, the state-court judgment must have been rendered before the district court proceedings commenced."

*Hoblock*, 422 F.3d at 85 (internal alterations and quotation marks omitted).

The *Rooker-Feldman* doctrine does not apply to the instant case.  First, Perfetto is not a state-court loser.  Perfetto prevailed on his claim before the Appellate Division and the ECWA was found to have acted arbitrarily and capriciously in disciplining Perfetto. Next, Perfetto's alleged injury — the violation of his rights and the accompanying damages — was not *caused* by the state-court judgment.  On the contrary, the injury is alleged to have been caused by the ECWA's commencement of disciplinary charges and alleged retaliation — conduct which occurred prior to the commencement of the state-court action and accordingly, could not have been caused by a judgment rendered in that action.  Finally, Perfetto's lawsuit does not seek review and rejection of the state-court judgment.  To the contrary, Perfetto seeks an order entered in accordance with

that judgment.   Accordingly, Perfetto's lawsuit is not barred by the *Rooker-Feldman* doctrine.

Nevertheless, claims one and three must be dismissed for failure to state a claim.   Other than alleging the facts surrounding the institution of the disciplinary charges and the Appellate Division's ruling, Perfetto has alleged no legal basis upon which to receive a judgment from this Court.   In his Article 78 proceeding, Perfetto challenged the ECWA's determination of his disciplinary charges.   Among other things, Perfetto argued that two of the three charges were precluded by the terms of the Agreement.   The Appellate Division agreed, enforced the Agreement and dismissed the first two charges.   With respect to the third charge, which was not precluded by the Agreement, the Appellate Division concluded that the ECWA's determination — which lacked specific findings justifying it — was arbitrary and capricious and the Appellate Division dismissed that charge.   The Appellate Division ordered that Perfetto be reinstated and awarded back pay and benefits for the period of time for which he was suspended and Perfetto received all the relief available to him.

To the extent Perfetto seeks a return of his consideration for the Agreement in light of ECWA's breach thereof, Perfetto already received his remedy of specific performance.   By dismissing the disciplinary charges that were based on Perfetto's conduct prior to December 12, 2000, the Appellate Division enforced the

Agreement.  Perfetto is not entitled to a return of his consideration.  Finally, to the extent Perfetto seeks reinstatement and/or back pay from the time of his resignation in August 2002, no such relief can be awarded based on the Appellate Division's ruling because the necessity of Perfetto's resignation was not at issue before the Appellate Division and thus its ruling provides no basis for an award of that relief.

Accordingly, Perfetto's first and third claims will be dismissed for failure to state a claim upon which relief can be granted.

B.  Claim Two -- Violation of New York Civil Service Law §75-b

The ECWA contends that this claim must be dismissed because the statute permits Perfetto to raise retaliation only as a defense to disciplinary charges and does not permit a separate claim for damages.[7]   Perfetto makes no argument in opposition.

New York Civil Service Law §75-b(3)(c) provides:

> "Where an employee is not subject to any of the provisions of paragraph (a) or (b) of this subdivision, the employee may commence an action in a court of competent jurisdiction under the same terms and conditions as set forth in article twenty-C of the labor law."

---

[7] Alternatively, the ECWA argues that the claim must be dismissed because (1) Perfetto failed to notify the proper persons at the ECWA of the alleged misconduct; (2) Perfetto did not have a good faith basis to believe that the alleged misconduct of which he notified Lisinski and Lott had actually occurred; (3) the persons who allegedly retaliated against Perfetto did not know of his statements to Lisinski and Lott and thus could not have been retaliating against Perfetto because of the statements; and (4) some of the retaliatory action of which Perfetto complains does not constitute "personnel action" within the meaning of the statute.

The ECWA contends that Perfetto is subject to the provisions of §75-b(3)(a) and therefore cannot maintain an action under §75-b(3)(c).  Section 75-b(3)(a) states:

> "Where an employee is subject to dismissal or other disciplinary action under a final and binding arbitration provision, or other disciplinary procedure contained in a collectively negotiated agreement, or under section seventy-five of this title or any other provision of state or local law and the employee reasonably believes dismissal or other disciplinary action would not have been taken but for the conduct protected under subdivision two of this section, he or she may assert such as a defense before the designated arbitrator or hearing officer.  If there is a finding that the dismissal or other disciplinary action is based solely in a violation by the employer of such subdivision, the arbitrator or hearing officer shall dismiss or recommend dismissal of the disciplinary proceeding, as appropriate, and, if appropriate, reinstate the employee with back pay, and, in the case of an arbitration procedure, may take other appropriate action as is permitted in the collectively negotiated agreement."

Section 75-b(3)(a) applies to individuals subject to "other disciplinary procedure contained in a collectively negotiated agreement, *or* under section 75 of this title ***."  It is undisputed that Perfetto faced disciplinary charges pursuant to §75 of the Civil Service Law and that certain aspects of those proceedings were governed by the provisions of a collectively negotiated agreement.  Accordingly, Perfetto is subject to the provisions of §75-b(3)(a) and may not pursue a private cause of action for retaliation pursuant to §75-b(3)(c). *See e.g.*, *Singh* v. *City of New York*, 418 F. Supp.2d 390, 403 (S.D.N.Y. 2005); *Taylor* v. *New York*, 608 N.Y.S.2d 371, 377 (Ct. Claims 1994) (*citing* Governor Cuomo's Memorandum approving the bill adding §75-b to the Civil Service Law in which

he stated "[p]rivate employees and public employees not covered by statutory or collectively negotiated disciplinary provisions will be permitted *** to commence a civil action for relief ***.").

C. <u>Claim Seven -- Violation of 42 U.S.C. §1983</u>

Both parties seek summary judgment as to this claim.  Perfetto argues that he is entitled to judgment because the undisputed facts demonstrate that the ECWA retaliated against him after he engaged in speech regarding matters of public concern and the ECWA cannot demonstrate that its disciplinary actions were necessary to maintain proper functioning of the ECWA.  Perfetto also argues that, because the Appellate Division has already determined that the ECWA acted arbitrarily and capriciously in finding him guilty of the disciplinary charges, he has demonstrated a violation of his Due Process rights.

The ECWA, on the other hand, seeks summary judgment in its favor and argues that this claim must be dismissed because (1) Perfetto failed to allege that the ECWA took any adverse action against him pursuant to an official policy or custom and (2) even if Perfetto had alleged an official policy or custom, Perfetto's Due Process rights were not violated because he received all the process due him. The ECWA also opposes Perfetto's assertion of a First Amendment retaliation claim as Perfetto did not rely on the First Amendment in his Complaint.

In response to the ECWA's motion, Perfetto argues that he has sufficiently demonstrated that the ECWA's retaliatory actions were taken pursuant to official policy or custom because Mendez, who made the final determination of guilt, was the Executive Director of the ECWA and therefore was a person with final policymaking authority whose actions would subject the ECWA to liability. Alternatively, Perfetto argues that liability may be imposed on the ECWA because there is an unofficial custom at the ECWA of retaliating against employees who exercise their First Amendment rights.[8]

1.  Section 1983 Claims Generally

In order to prevail on a claim under 42 U.S.C. §1983 a plaintiff must show that the conduct complained of: (1) was committed by a person acting under color of state law; and (2) deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States.  *See Palmieri* v. *Lynch*, 392 F.3d 73, 78 (2d Cir. 2004).  The Court will consider each of these elements in turn.

2.  Municipal Liability

Where, as here, a plaintiff seeks to impose liability for a violation of §1983 upon a municipality or a municipal agency, the plaintiff must demonstrate that

---

[8] In support of this argument, Perfetto points to former employees Annette Juncewicz and Ford Beckwith, who also filed lawsuits against the ECWA arguing that they were the victims of unlawful retaliation based on their First Amendment free speech and political association rights.

the municipality or agency is itself liable for the alleged violations.  It is well-settled that a municipality cannot be held liable for the actions of its employees on a *respondeat superior* theory of liability.  *See Monell* v. *Dep't of Social Services*, 436 U.S. 658 (1978).   Rather, a municipality may be held liable when the action complained of resulted from : (1) an officially promulgated policy endorsed or ordered by the municipality, *see Pembaur* v. *City of Cincinatti*, 475 U.S. 469, 480 (1986); (2) a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it, *see City of St. Louis* v. *Praprotnik*, 485 U.S. 112, 130 (1988); (3) actions taken or decisions made by the municipal employee who, as a matter of state law, is responsible for establishing municipal policies with respect to the area in which the action is taken, *see Praprotnik*, at 129-30; or (4) the failure of the municipality to train its employees such that the failure rises to the level of deliberate indifference to the constitutional rights of others, *see City of Canton* v. *Harris*, 489 U.S. 378, 385 (1989).   The ECWA argues  that Perfetto cannot establish that the actions complained of were taken pursuant to an official policy or custom.  Perfetto, on the other hand, argues that the ECWA's liability is appropriate under either the final policymaker theory or under the pervasive custom or practice theory.

a.  <u>Final Policymaker Theory</u>

"Where the contention is *** that [the actions complained of] were taken or caused by an official who actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved."  *Jeffes* v. *Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), *cert. denied sub nom County of Schenectady* v. *Jeffes*, 531 U.S. 813 (2000).  "Whether the official in question possessed final policymaking authority is a legal question which is to be answered on the basis of state law."  *Ibid.* (internal citations omitted).  "The relevant legal materials[] include state and local positive law, as well as custom or usage having the force of law."  *Ibid.*  Finally, "[w]here a plaintiff relies not on a formally declared or ratified policy, it is incumbent on the plaintiff to establish this element as a matter of law."  *Jeffes*, at 57-58.

Perfetto alleges that the ECWA is liable because Mendez and Edward J. Kasprzak ("Kasprzak"), the ECWA Comptroller, were final policymakers who arbitrarily made the determination that Perfetto was guilty of the disciplinary charges.[9]  However, Perfetto points to no New York State or Erie County law demonstrating that Mendez or Kasprczak, at the time of the relevant actions, had final policymaking authority  for Erie County or for the ECWA as to disciplinary

---

[9] The November 14, 2001 letter advising Perfetto that the ECWA had determined him to be guilty of the disciplinary charges was signed by both Mendez and Kasprzak.

matters.[10]  Moreover, the ECWA, despite seeking summary judgment based on the nonexistence of municipal liability, has failed to offer any evidence or provision of state law demonstrating that they did not have final policymaking authority.

The Court will not presume, based solely on the fact that the relevant *decision* was apparently made by Mendez and Kasprzak, that Mendez and/or Kasprzak have final *policymaking* authority in this area under state law.  *See City of St. Louis* v. *Praprotnik*, 485 U.S. 112, 139-40 (noting that "simply exercising discretion in an area where that official is not the final policymaker under state law cannot, by itself, establish municipal liability").  Indeed, neither party has provided the Court with any information as to the structure or governance of the ECWA or as to the relevant provisions of New York State or Erie County law governing the ECWA.  The Court will not undertake such an investigation that neither party felt compelled to undertake.

Although this is an issue of law, the Court concludes that the matter of the ECWA's liability, if any, based on the actions of Mendez and/or Kasprzak, has not been adequately addressed by the parties and the Court must deny both motions

---

[10] In his deposition, Mendez states that the Commissioners delegated to him and Kasprzak the ability to hire and fire employees of the ECWA. *See* Collucci Aff. (Docket # 35), Ex. A. at 5.  Absent is any evidence or law relating to the structure of the ECWA, the composition and authority of the Commissioners referenced in Mendez's deposition or any other discussion relevant to the policymaking authority of the Commissioners, Mendez or Kasprzak.

for summary judgment without prejudice insofar as they are premised on the existence of or lack of municipal liability under the final policymaker theory. *See e.g.*, *Barry* v. *New York City Police Dep't*, 2004 WL 758299 at * 15 (S.D.N.Y. 2004) (denying summary judgment without prejudice where parties had not adequately briefed the issue of who had final policymaking authority under state law).

b. Unofficial Custom Theory

Perfetto alternatively argues that the ECWA has a practice and custom of retaliating against persons who exercise their First Amendment rights. Perfetto argues that such a custom can be seen solely from the course of events involved in his particular case — i.e., the institution, amendment and guilty determination with respect to the disciplinary charges against him, the instances of harassment by Lisinski, Mendez's request that the Union "give [them] Lou [Perfetto]" in exchange for more productive negotiations for the new collective bargaining agreement, all of which resulted in Perfetto's constructive discharge. Perfetto also argues that the practice and custom is even more apparent when the cases of Annette Juncewicz and Ford Beckwith are also considered.

A municipal "custom," generally has not received formal approval by the municipality. However, the municipality may be subject to liability based "on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of County Comm'rs* v. *Brown*, 520 U.S. 397, 404 (1997). The custom or practice

must be "so persistent, widespread, and permanent that [it] constitute[s] a custom or usage with the force of law." *Sorlusso* v. *New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992).

Perfetto has failed to raise a genuine issue of material fact as to the existence of such a widespread, persistent and permanent custom of retaliating against ECWA employees who exercise their First Amendment rights.  Such a custom cannot be demonstrated by the circumstances of Perfetto's case alone where the actions related solely to Perfetto and took place over the course of less than 2 years.

The cases concerning the other employees also fail to raise an issue of fact as to the existence of such a practice or custom.  Both Juncewicz and Beckwith filed federal lawsuits against the ECWA.  Juncewicz alleged that she was improperly terminated from her employment with the ECWA in retaliation for her husband's political activity in violation of her First Amendment political association rights.  Juncewicz's case was disposed of by settlement and no determination was made as to whether the ECWA had retaliated against her.  Ford Beckwith, on the other hand, alleged that he was improperly terminated after he alerted the media to a labor dispute and picket at the ECWA concerning the discipline of another ECWA employee. Beckwith's claims of First Amendment

retaliation and Fourth Amendment violations have been dismissed and his Article 78 claim challenging his termination was remanded to state court.

The mere citation, however, to the allegations made by other employees does not suffice to create a genuine issue of material fact as to the existence of such a custom or policy. *Compare Barry* v. *New York City Police Dep't*, 2004 WL 758299 at *11-*13 (S.D.N.Y. 2004) (plaintiff raised a genuine issue of material fact as to department's policy or custom of retaliating against officers who revealed improper police conduct — i.e., the "blue wall of silence" — when accompanied by testimony of other officers attesting to such retaliation and evidence of a report of a special commission documenting such retaliation.) Plaintiff has failed to raise a genuine issue of material fact as to whether there exists, within the ECWA, a policy or custom of retaliating against employees who exercise their First Amendment rights.

However, as the Court concludes that neither party has demonstrated the ECWA's liability based on a final policymaker theory, or lack thereof, as a matter of law, the Court must turn to whether Perfetto has established, or raised a genuine issue of material fact as to whether, his federal rights were violated.

3. Federal Rights

The ECWA argues that Perfetto has failed to demonstrate that he was deprived of any Constitutionally protected rights because he received — through

the New York Civil Service Law §75 disciplinary process and his subsequent Article 78 judicial proceeding — all the process to which he was entitled. Perfetto, on the other hand, argues that even though he was successful in challenging the ECWA's determination through the Article 78 proceeding, he is still entitled to bring this cause of action because certain remedies — i.e., money damages — were not available in the Article 78 proceeding. Perfetto also argues that a violation of his substantive due process rights has been established as a matter of law by virtue of the Appellate Division's finding that the ECWA's determination was arbitrary and capricious.

4. <u>Procedural Due Process</u>

The basic tenet of procedural process is that one must be afforded notice and an opportunity to be heard prior to a deprivation of a property right. *See Bd. of Regents* v. *Roth*, 408 U.S. 564, 569-70 & n.7 (1972). Neither party disputes that Perfetto's interest in his continued employment is a property right. The ECWA argues, however, that Perfetto received notice of the disciplinary charges and received an adequate post-deprivation remedy through the Article 75 hearing procedure and the Article 78 judicial proceeding. Perfetto argues that his procedural due process claim is viable because the Appellate Division did not consider whether his Constitutional rights had been violated and because he

could not obtain complete relief — i.e., money damages — through the Article 78 proceeding.

The ECWA is correct.  Perfetto's procedural due process rights were adequately protected by virtue of his Article 78 proceeding.  The Second Circuit has stated that "there is no constitutional violation (and no available §1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty."  *Hellenic Am. Neighborhood Action Comm.* v. *City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (citing *Parrat* v. *Taylor*, 451 U.S. 527 (1981), and *Hudson* v. *Palmer*, 468 U.S. 517 (1984)).  Here, Perfetto's Article 78 proceeding — which successfully remedied ECWA's arbitrary imposition of discipline upon him — adequately protected Perfetto's procedural due process rights even though Perfetto was not able to recover the same relief as is available in a §1983 action. *Hudson* v. *Palmer*, 468 U.S. at 535.  Furthermore, to the extent Perfetto argues that he was constructively discharged without due process, such claim also fails.  Perfetto also could have challenged his alleged forced resignation through a separate Article 78 petition, or by amending the petition which was under consideration by the Appellate Division at the time Perfetto was allegedly forced to resign.   *See Hellenic*, at 881; *Monroe* v. *Schenectady County*, 1 F. Supp.2d 168, (N.D.N.Y. 1997), *aff'd*, 152 F.3d 919 (2d Cir. 1998) ("[i]t is well-established in this Circuit that [an Article 78] proceeding

provides an adequate post-deprivation remedy where a plaintiff alleges he was coerced into surrendering an employment-based property or liberty interest.") (internal citations omitted).   Accordingly, Perfetto cannot state a claim for deprivation of his procedural Due Process rights.

5.  Substantive Due Process

As noted *infra*, Perfetto's additional argument centers on the arbitrary and capricious nature of the ECWA's determination that he was guilty of the disciplinary charges.   Essentially, Perfetto argues that, because the Appellate Division concluded that the ECWA acted arbitrarily and capriciously in its determination of Perfetto's guilt, such conclusion establishes a violation of Perfetto's substantive due process rights.

"The doctrine of substantive due process protects the individual against certain government actions 'regardless of the fairness of the procedures used to implement them.'" *McClary* v. *O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986) (quoting *Daniels* v. *Williams*, 474 U.S. 327 331 (1986)).   The United States Supreme Court has warned that courts should be reluctant to expand the notion of substantive due process because "guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Collins* v. *Harker Heights*, 503 U.S. 115, 125 (1992).  Such warning applies most particularly with respect to "claims asserted against public employers because state law, rather than the Federal

Constitution, generally governs the substance of the employment relationship." *Id*. at 128.

Moreover, Courts within this Circuit have required that the employer's conduct to be arbitrary and intentionally abusive in order to support a claim for violation of substantive due process rights. *See Adler* v. *County of Nassau*, 113 F. Supp.2d 423 (E.D.N.Y. 2000) (citing *McClary* v. *O'Hare*,786 F.2d at 88). Such conduct is actionable only if the employer "abuses some power unique to its role as a governmental entity." *Sussman* v. *New York City Health & Hosps. Corp.*, 1997 WL 334964, at *12 (S.D.N.Y. 1997) (citing *McClary* v. *O'Hare*, 786 F.2d at 89).

Here, Perfetto has not alleged that the ECWA took any action against him that was uniquely governmental in nature. Rather, Perfetto complains of conduct which could be taken by any employer — public or private. Thus, Perfetto has not stated a substantive due process claim.

6. <u>First Amendment Free Speech</u>

Finally, Perfetto asserts that his seventh cause of action also states a claim for retaliation in violation of his First Amendment free speech rights. Perfetto seeks an award of summary judgment, arguing that the undisputed facts demonstrate that the ECWA retaliated against him for the statements he made to Lisinski and Lott, and that the ECWA should be precluded from arguing that it had a legitimate basis for disciplining him.

a.  Notice to the ECWA of a First Amendment retaliation claim

As noted *infra*, the ECWA contends that Perfetto should be precluded from asserting his First Amendment retaliation claim because he did not rely on the First Amendment in his Complaint and instead cited only to the Fifth Amendment and the Fourteenth Amendment.  The ECWA further argues that Perfetto also failed to list a First Amendment claim in his responses to the ECWA's interrogatories, which interrogatories specifically asked Perfetto to describe the alleged federal law violations.

Perfetto, in opposition, argues that his Complaint referenced the Fourteenth Amendment, which Amendment made the Bill of Rights applicable to the States. Thus, Perfetto asserts, the First Amendment was made applicable to the States via the Fourteenth Amendment and his reference to the Fourteenth Amendment in his Complaint was sufficient to place the ECWA on notice of his claim under the First Amendment.

Rule 8(a) of the Federal Rules of Civil Procedure ("FRCvP") requires a plaintiff to allege a "short and plain statement of the claim showing that the pleader is entitled to relief."  FRCvP 8(a).  A plaintiff is not required to allege the facts in detail or to plead the legal theory of the case or elements of the claim. *See Phillips* v. *Girdich*, 408 F.3d 124, 130 (2d Cir. 2005).

In support of its contention that Perfetto should be prevented from asserting this claim, the ECWA cites, *inter alia*, *Murphy* v. *Bd. of Education of Rochester City Sch. Dist.*, 273 F. Supp.2d 292 (W.D.N.Y. 2003).  In that case, Murphy, alleged that defendants discriminated and retaliated against him based on his race and/or age and/or disability.  It was only on his motion for summary judgment that Murphy asserted claims for violation of his First Amendment rights by the teaching of religion in Rochester City Schools.  In refusing to consider Murphy's First Amendment claims, the district court stated

> "*** the simple fact is that [the claims] are not pleaded in the complaint and they are utterly unrelated to the claims that *are* pleaded."

*Murphy*, at 326.

In contrast to *Murphy*, Perfetto's Complaint is replete with allegations that the ECWA retaliated against him for his speech which — he alleges — relates to matters of public concern.  Accordingly, although Perfetto did not specifically cite to the First Amendment, his Complaint provided the ECWA with sufficient notice of a First Amendment free speech retaliation claim.

As to the ECWA's claim that Perfetto failed to identify his First Amendment claim when required to do so by the ECWA's interrogatories, a review of the subject interrogatories reveals that Interrogatory # 13 asked Perfetto to "set forth all *factual* information" relating to the alleged constitutional violations.  *See*

DeLuca Aff., Ex. D, at 12.  Perfetto was not asked to identify the particular rights alleged to have been violated or the legal theories on which he relied. Accordingly, the Court concludes that the ECWA had sufficient notice that Perfetto was raising a claim for First Amendment retaliation.[11]

b.  Elements of First Amendment Retaliation Claim

Perfetto seeks summary judgment on this claim, arguing that, as a matter of law, the ECWA retaliated against him and that this Court may so hold because the ECWA is collaterally estopped from arguing that it had a legitimate basis for disciplining him.  The ECWA argues that, if Perfetto has stated a First Amendment retaliation claim, such claim must be dismissed because Perfetto has failed to present a *prima facie* case of retaliation.

A public employee who makes a claim of First Amendment retaliation must show that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment [decision]." *Cioffi* v. *Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 162 (2d Cir. 2006).

---

[11] Moreover, the ECWA does not argue that it lacked sufficient notice as to the factual allegations relevant to the First Amendment claims.  The time, place and content of the allegedly protected statements were also the subject of Perfetto's claim under New York Civil Service Law §75-b.

Once a plaintiff has shown such facts, the employer may still prevail if it can demonstrate that its interest outweighed the value of the speech because "the employee's expression was likely to interrupt the [employer's] activities, or that it would have taken the same adverse action even in the absence of protected speech. *Cobb* v. *Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004).

i. <u>Public Concern</u>

"In assessing whether an employee's speech addresses a matter of public concern, [the Court] consider[s] the content, form, and context of a given statement as revealed by the whole record *** [and] evaluate[s] whether the speech relates to a matter of political, social, or other concern to the community." *New York State Law Officers Union* v. *Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (internal quotation marks and citations omitted).  "[The speech] must have been made as a public citizen rather than as an employee on matters of personal interest."  *Grillo* v. *New York City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002).  However, "mixed motivations are involved in most actions we perform every day; we will not hold [plaintiffs] to herculean standards of purity of thought and speech."  *Johnson* v. *Ganim*, 342 F.3d 105, 114 (2d Cir. 2003).  Whether particular speech pertains to a matter of public concern is a question of law for the Court to decide.  *See id*. at 113.

Perfetto argues that his discussions with Lisinski and Lott involved matters of public concern as they pertained to, *inter alia*, possible misuse of ECWA property, the alleged the conduct of political activity on ECWA time, the alleged termination of an employee in violation of her First Amendment rights and the ECWA's failure to provide its workers with proper safety equipment — to wit., work boots and prescription safety glasses.

The ECWA contends that "the context and motive behind [Perfetto's] speech clearly dictate that the matters purportedly addressed did not involve issues of public concern." ECWA's Opp'n Mem. at 17. The ECWA argues that the fact that the statements were made in private conversations during working hours weighs against a finding of public concern. Moreover, the ECWA argues that Perfetto's statements amounted to reports of internal operations at the ECWA.[12]

The Court concludes that Perfetto's alleged statements related to matters of public concern. The fact that Perfetto made the statements in the context of private conversations with others at the ECWA is not relevant to whether the *content* relates to matters of public concern. *See Givhan* v. *Western Line Consol.*

---

[12] The ECWA also argues that, at least with respect to any claim arising out of statements allegedly made to Lisinski, Perfetto's summary judgment motion must be denied because Lisinski denies that he ever had any discussion with Perfetto of allegedly improper governmental conduct at the ECWA. *See* DeLuca Aff. (Docket # 24), Ex. C at 43-52.. Thus, the ECWA argues, an issue of fact exists as to whether the relevant statements were even made. Lott, however, has not denied that such statements were made to him.

*Sch. Dist.*, 439 U.S. 410, 415-16 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [freedom of speech] is lost to the public employee who arranges to communicate privately with his employer rather than spread his views before the public.").

Next, the ECWA obliquely challenges Perfetto's "motive" in making the statements and argues that such "motive" is highly relevant to the public concern determination. What the ECWA fails to do, however, is indicate what personal motive Perfetto had for making the statements. With perhaps the exception of the complaint regarding the ECWA's failure to provide its workers with their allowances for boots and/or prescription safety eyeglasses, there is no indication that a resolution of the matters about which Perfetto complained would have benefitted Perfetto as an employee, rather than as a citizen.

The Court cannot agree with the ECWA's position that complaints alleging: (1) that Mendez may have arranged — on behalf of a prospective purchaser — for a water main to be installed or for water rights to be issued[13] with respect to private property under development; (2) that an ECWA employee may have received a tuition reimbursement to which he was not entitled; (3) that an ECWA

---

[13] While Perfetto indicated in his deposition that he revealed to Lisinski and Lott that Mendez may have procured a water main for the property owner, in Mendez's deposition he discusses the issuance of water rights to a property under development. It is unclear from the portions of the depositions provided whether Perfetto and Mendez are discussing the same allegations.

worker may have been using his ECWA office equipment to view inappropriate internet websites; and (4) that an ECWA employee may have been terminated because of her husband's political activities, relate solely to the ECWA's internal office affairs. Rather, such matters present political, social or other issues of concern to the community.

The Court concludes, therefore, that Perfetto's speech related to matters of public concern.

ii. Adverse Employment Action

An adverse employment action is one that resulted in a "materially adverse change in the terms and conditions of employment." *Galabya* v. *New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal citation omitted). A materially adverse change is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Ibid.* (internal citations omitted). Adverse employment actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris* v. *Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). The Second Circuit has also stated, however, that "[o]ur precedent allows seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips* v. *Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) (citing *Bernheim* v. *Litt*, 79 F.3d 318, 325 (2d Cir. 1996)). The Court went on to hold in *Phillips* that

"in order to prove a claim of First Amendment retaliation in a situation other than the classic examples of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, plaintiff must show that (1) using an objective standard; (2) the total circumstances of [his] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace."

*Phillips*, 278 F.3d at 109.

The ECWA argues that none of the alleged retaliatory actions taken against Perfetto amount to adverse employment actions because they were not ultimate employment decisions. As discussed *supra*, adverse employment actions are not limited to such ultimate decisions.

Perfetto alleges that he was subjected to numerous discrete acts of retaliation that constitute adverse employment actions and that, when the discrete acts are considered as a single course of events, he has demonstrated that his working conditions were so intolerable that he was forced to resign. The Court first considers each alleged act of retaliation on its own.

Perfetto alleges that in December 2001, Lisinski threatened him with discipline and termination of his employment. He further alleges that in January 2001 he was issued a warning by Cullinan Szvoren pertaining to his absence from work on December 13, 2000 without permission, despite the fact that the Union had notified the ECWA that Perfetto would be absent to conduct Union activities. Perfetto also alleges that he was "forced to absent himself" from work without

pay during the week of January 8, 2001.  Finally, Perfetto alleges that during the week of January 8, 2001, while Perfetto was absent, Lisinski circulated a flyer mocking Perfetto's efforts as a Union representative.

The Court concludes that none of these events, on its own, constitutes an adverse employment action.  While Lisinski may have threatened Perfetto with discipline and termination, there is no indication any such action was taken by Lisinski or that Lisinski had the ability to take such action.  As to Cullinan Szvoren's written warning, there is no indication that the placement of such warning in Perfetto's file had any negative impact on the terms or conditions of his employment.  As to his claim that he was "forced to absent himself" during the week of January 8, 2001, such absence was admittedly the result of his Agreement with the ECWA to resolve the August 2000 disciplinary charges and he expressly acquiesced in such absence.  Finally, as to the alleged distribution of the derogatory pamphlet, such conduct — even if engaged in by Lisinski[14] — is merely an inconvenience and did not alter the terms and conditions of Perfetto's employment.

Perfetto next alleges that, in February 2001, Mendez intimated to the Union leadership that a collective bargaining agreement would be reached if the Union

---

[14] The only evidence submitted as to whether Lisinski distributed the pamphlet is Perfetto's speculation in his deposition that Lisinski had done so.  Perfetto's belief was based on the content of the document as something Lisinski would say.

would allow the ECWA to terminate Perfetto's employment. Specifically, Perfetto alleges that Mendez said "give us Lou" and a collective bargaining agreement would be reached. Perfetto has provided no admissible evidence raising an issue of fact as to whether such a statement was made. Even if made, such statement, upon which no action was taken, does not rise to the level of adverse employment action.

Perfetto next alleges that disciplinary charges were instituted against him in retaliation for his speech. Perfetto was served with disciplinary charges in May, 2001, which charges were amended once in May and a second time in June 2001. A Hearing Officer recommended on September 28, 2001 that the charges be dismissed and on October 1, 2001 Perfetto was served with a new set of disciplinary charges pertaining to different events.[15] Thereafter, in November 2001, the ECWA did not follow the recommendation of the Hearing Officer and found Perfetto guilty of the May and June disciplinary charges.

The ECWA argues that "[r]eceiving disciplinary charges and attending a hearing, without more, do not rise to the level of adverse employment action." Opp'n Mem. at 11. What the ECWA glosses over is that the citation for such

---

[15] The October 2001 disciplinary charges alleged that Perfetto was insubordinate to Cullinan Szvoren in September 2001 and that on two occasions in August 2001 Perfetto had negligently operated ECWA vehicles resulting, on both occasions, in damage to the ECWA vehicles and, on one occasion, to another vehicle. Perfetto served a 30-day suspension when the charges were filed. Those charges were never resolved as Perfetto resigned prior to any hearing.

proposition states that such, "*without more*" does not constitute an adverse employment action. In the instant case, Perfetto alleges more. He alleges that he was adjudicated guilty of the May and June charges, and that the second set of charges was filed one business day after the Hearing Officer recommended that the May and June charges be dismissed. Perfetto has raised a genuine issue of material fact as to whether the repeated institution of disciplinary charges constitutes an adverse employment action.

Finally, Perfetto alleges that all of the above events — even if some fail to rise to the level of adverse action individually — collectively made his employment conditions so intolerable that he was forced to resign on August 8, 2002 and that such forced resignation, or constructive discharge, is itself an adverse employment action.

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily." *Chertkova* v. *Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). A constructive discharge can be shown where the work conditions are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Ibid*. A plaintiff must raise a triable issue of fact as to whether the

employer deliberately created intolerable working conditions. *See Spence* v. *Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993).

First, the Court notes that the record contains much *argument* but little *evidence* in support of the constructive discharge claim. While Perfetto's counsel affirms that Perfetto was forced to resign due to the toll the ECWA's retaliation was taking on Perfetto and his family life, there is no evidence provided to that effect. *See* Collucci Aff. (Docket # 22) at ¶ 43. Although portions of Perfetto's deposition are attached to the record, absent is any testimony relevant to his reasons for his resignation.[16] Other than counsel's argument, the Court has been presented merely with Perfetto's letter of resignation. *See* Cullinan Szvoren Aff. (Docket # 25) at Ex. B.

Nonetheless, consideration of a constructive discharge claim is based on an objective standard — *i.e.*, whether a reasonable person in the employee's position would have felt compelled to resign. In light of the genuine issue as to whether Perfetto suffered an adverse employment action in the guilty determination of the May and June 2001 disciplinary charges and the filing of the October 2001 disciplinary charges, the Court might ordinarily conclude that a genuine issue also exists as to whether a reasonable person would have felt compelled to resign his

---

[16] Although counsel directs the Court's attention to specified pages of Perfetto's deposition, none of those pages is included in the record.

employment in light of the circumstances.  In this case, however, the Court cannot conclude that a genuine issue of material fact exists.

Perfetto resigned his employment on August 8, 2002.   The retaliatory actions of which Perfetto complains occurred in December 2000, January 2001, May 2001, June 2001, October 2001 and November 2001.  The final alleged act of retaliation occurred when the ECWA found Perfetto guilty of the disciplinary charges on November 14, 2001.  Perfetto has not alleged any other difficulty in his employment or his working conditions after that time.  Thus, there is a 9-month gap between the last allegedly improper act and Perfetto's allegedly forced resignation.  Perfetto has simply failed to allege facts raising a genuine issue as to whether his working conditions at the time of his resignation were so intolerable that a reasonable person would have felt compelled to resign.

iii.  Causal Connection

Finally, in order to state a claim for retaliation, Perfetto must raise a genuine issue of material fact as to whether there is a causal connection between the alleged adverse employment action and his protected speech.

> "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech.  Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or

> directly by evidence of retaliatory animus.  Summary judgment is
> precluded where questions regarding an employer's motivation
> predominate in the inquiry regarding how important a role the
> protected speech played in the adverse employment decision."

*Morris* v. *Lindau*, 196 F.3d 102, 110 (2d Cir. 1999).  Within this Circuit, district

courts have held that the causal connection can be established when the adverse

employment action follows within a couple months of the protected speech.  *See*,

*e.g.*, *Calabro* v. *Nassau University Medical Ctr.*, 424 F. Supp.2d 465, 473 (E.D.N.Y.

2006).

The ECWA argues that, even if Perfetto's speech was protected and even

if he suffered an adverse employment action, Perfetto cannot demonstrate that his

speech was a substantial or motivating factor in the decision to take the adverse

employment action.  The ECWA argues that, at the time the May and June 2001

disciplinary charges were filed, neither Mendez nor Cullinan Szvoren — who

actually instituted the charges — knew of Perfetto's allegedly protected speech.

Thus, the ECWA argues, retaliation for such speech could not have motivated

their actions.

The Court concludes that such is a disputed issue of fact.  In his deposition,

Mendez indicated that he is advised whenever the ECWA is sued.  *See* Collucci

Aff., Ex. A at 5.  It is undisputed that Perfetto initially commenced his Article 78

petition in May, 2001, after the disciplinary charges were instituted but prior to

Mendez's determination of Perfetto's guilt.  Perfetto clearly alleged the existence and the content of his conversations with Lisinki and Lott in his Article 78 petition.  Thus, the Court concludes that there exists an issue of fact as to whether Mendez was aware of Perfetto's Article 78 petition, the allegations contained therein and thus whether the institution of the same was a consideration in his determination.

c.  <u>Application of Collateral Estoppel Doctrine</u>

Finally, Perfetto seeks to preclude the ECWA from arguing that it had a legitimate basis on which to discipline Perfetto.   Perfetto asserts that, because the Appellate Division annulled the ECWA's guilty determination with respect to the disciplinary charges and the ECWA could have raised but did not raise in that proceeding any legitimate — i.e., non-retaliatory — basis it had for the charges, the ECWA should be precluded from now offering such rationale.  The ECWA argues that collateral estoppel is inapplicable because the issue of whether Perfetto was properly disciplined has never been litigated.

The doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party *** whether or not the tribunals or causes of action are the same."  *Ryan* v. *New York Tel. Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826 (1984).  Collateral estoppel is applicable where (1) there is "an

identity of issue which has necessarily been decided in the prior action and is decisive of the present action" and (2) there was "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz* v. *Public Administrator*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960 (1969).

The doctrine of collateral estoppel is inapplicable to the issue on which Perfetto seeks its application.  The legal issue before the Appellate Division in Perfetto's Article 78 petition was whether the ECWA had acted properly in determining, contrary to the Hearing Officer's recommendation and without stating any reasons therefor, that Perfetto had committed the disciplinary charges.

The only factual decision by the Appellate Division was that the ECWA had acted arbitrarily and capriciously in adjudicating Perfetto guilty of the disciplinary charges without stating its supporting factual findings.  There was no determination made as to whether, at least with respect to the third charge, the ECWA's guilty adjudication could have been justified had it been properly supported.  Moreover, the issue in this case is whether the ECWA instituted the charges and adjudicated Perfetto guilty of the same *in retaliation for* protected speech.  That issue clearly has never been adjudicated.  Therefore, the doctrine of collateral estoppel does not apply.

## **CONCLUSION**

Accordingly, for the reasons stated, the ECWA's Motion for Summary Judgment will be granted as to Perfetto's First, Second and Third Claims and granted in part and denied in part as to Perfetto's Seventh Claim and Perfetto's Motion for Partial Summary Judgment will be denied in its entirety.

DATED:     Buffalo, N.Y.

           July 7, 2006

_____
              /s/ John T. Elfvin
           JOHN T. ELFVIN
           S.U.S.D.J.